**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **MARGARET S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-19-2492** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Margaret S. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner").  The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA").  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 15, Plaintiff's Alternative Motion for Remand ("Plaintiff's Alternative Motion"), ECF No. 15, and Defendant's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 16.  The Court has reviewed the motions, related memoranda, and the applicable law.  No hearing is deemed necessary.  *See* Loc. R. 105.6 (D. Md.).  For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  A separate order will issue.

## I.      Procedural Background

On December 28, 2015, Plaintiff filed for DIB under Title II of the SSA, alleging

disability beginning August 13, 2013.  R. 13.  Plaintiff alleged disability due to bipolar disorder,

depression, anxiety, asthma, high blood pressure, lower abdomen disorder, and antisocial

behavior.  R. 76, 79, 89, 115.  Plaintiff's claims were initially denied on March 22, 2016, and

upon reconsideration on June 27, 2017.  R. 13.  An administrative hearing was held on August 6,

2018.  R. 13.  On November 9, 2018, the ALJ found that Plaintiff was not disabled from the

alleged onset date of August 13, 2013.  R. 24.  Plaintiff sought review by the Appeals Council,

which concluded on July 9, 2019, that there was no basis for granting the request for review.  R.

1.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

## II.      Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the

ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).

The Court must affirm the ALJ's decision if it is supported by substantial evidence and the

ALJ applied the correct law.  *Id.* ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.

Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907

F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job

correctly and supported the decision reached with substantial evidence, this Court cannot

overturn the decision, even if it would have reached a contrary result on the same evidence."

*Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is

"more than a mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) (2012).  The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. §§ 404.1520(a)(4) (2012). Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *See also* 20 C.F.R. § 404.1545(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence

4

(e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III.    Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 14–24. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 13, 2013, the alleged onset date of Plaintiff's disability. R. 16. At step two, under 20 C.F.R. § 404.1520(c) the ALJ determined that Plaintiff had the following severe impairments: other disorders of the urinary tract, affective disorders, and anxiety disorders. *Id.* The ALJ found that Plaintiff's asthma and obesity were non-severe impairments. *Id.* At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)." R. 17. The ALJ also found that Plaintiff has a mild limitation in understanding, remembering, or applying information; but has moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

R. 17–18.  Before turning to step four, the ALJ determined that claimant had the RFC to perform

medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations:

> [Plaintiff] is limited to performing simple, routine, and repetitive tasks.  [Plaintiff] is
> limited to performing simple work-related decisions.  [Plaintiff] can occasionally interact
> with supervisors, coworkers, and the public.  [Plaintiff] is able to tolerate few changes in a
> routine work setting, which is defined as she can adapt to changes in a routine work setting
> that are well-explained or implemented gradually.

R. 19.  At step four, the ALJ determined Plaintiff is able to perform her past relevant work as a

Laundry Worker I, as it is actually and generally performed.  R. 23–24.  Consequently, the ALJ

found that "[Plaintiff] has not been under a disability, as defined in the Social Security Act, from

August 13, 2013, through the date of this decision."  R. 24.

On appeal, Plaintiff argues that the Court should reverse the ALJ's decision, or in the

alternative remand this matter for a new administrative hearing, alleging that (1) the ALJ's step-

three determination is unsupported by substantial evidence, and that (2) the ALJ's decision runs

afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F. 3d 632 (4th Cir. 2015).  Pl.'s

Mem. in Supp. of Pl.'s Mot. 8, 19, ECF No. 15–1, 2.

### A.  The ALJ Supported His Decision By Substantial Evidence

Plaintiff asserts that Defendant's decision is not supported by substantial evidence on the

record as a whole.  Pl.'s Mem. in Supp. of Pl.'s Mot. 4.  Specifically, Plaintiff argues that the

ALJ erred at step-three of the sequential evaluation process by failing to properly evaluate

whether Plaintiff's impairments met or equaled 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04,

12.06. [1] Pl.'s Mem. in Supp. of Pl.'s Mot. 8–18.  The Court disagrees.

---

[1] The Court has summarized Plaintiff's argument for appeal for clarity and conciseness.

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *Grimes v. Berryhill*, No. CV TMD 17-1794, 2018 WL 4206936, at \*4 (D. Md. Sept. 4, 2018) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "In other words, the issue before the Court is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

As stated previously, when evaluating the evidence in an appeal of a denial of benefits, the Court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a plaintiff is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in C.F.R. Part 404, Subpart P, Appendix 1. However, an ALJ is required to discuss listed impairments and compare them individually to listing criteria only when there is "ample evidence in the record to support a determination that the [Plaintiff]'s impairment meets or equals one of the listed impairments."

7

*Ketcher v. Apfel,* 68 F. Supp. 2d 629, 645 (D. Md. 1999).  Where a plaintiff can show that her condition "meets or equals the listed impairments," the plaintiff is entitled to a conclusive presumption that she is disabled within the meaning of the Act.  *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, "if met are conclusive on the issue of disability" (citation omitted)).  The burden of proof is on the plaintiff to show that she meets *all* of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The plaintiff bears the burden of demonstrating that her impairment meets or medically equals a listed impairment.  *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

Listings 12.04 and 12.06, refer to mental impairments.  Specifically, 12.04 concerns depressive disorders, and 12.06 concerns anxiety.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Both listings entail: (1) "paragraph A criteria," which consist of a set of medical findings; and (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), (G).  Specifically, "Paragraph B" consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  *Id.* § 12.00(A)(2)(b), § 12.04(B).

The ALJ employs a "special technique" to rate a plaintiff's degree of limitation in each of the functional areas, based on the extent to which the plaintiff's impairment "interferes with the [plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2).  The ALJ uses a five-point scale to rate a plaintiff's degree of limitation in the first three functional areas: none, mild, moderate, marked, or extreme.  *Id.* § 404.1520a(c)(4).  To satisfy "paragraph B" of the mental impairment listings, a plaintiff must

exhibit either "marked" limitations in two of the first three functional areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See. e.g.*, 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the Plaintiff]'s ability to function." *Id.* § 12.00(C).

Plaintiff contends that the ALJ failed to cite substantial evidence to support the degree of functional limitation afforded to each of the functional areas as required by the special technique analysis. Pl.'s Mem. in Supp. of Pl.'s Mot. 14. Specifically, Plaintiff argues that the functional areas of understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace lacked evidence to support the ALJ's conclusion. *Id.* This Court finds that the ALJ in the instant case applied the special technique and analyzed each functional area with substantial evidence.

With the functional area understanding, remembering, or applying information, the ALJ found that Plaintiff had a mild limitation and noted the following:

> In understanding, remembering, or applying information, [Plaintiff] has mild limitation. [Plaintiff] reported problems with her memory, and she noted that her husband has to remind her to complete daily tasks. During the March 15, 2016, psychiatric consultative examination, [Plaintiff] remembered only one item out of three items during the memory task. However, March 2016 and April 2016 treatment records revealed normal cognitive functioning. I find this consistent with a mild limitation in understanding, remembering, or applying information.

R. 17. In terms of the functional area concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff had a moderate limitation and stated:

> With regard to concentrating, persisting, or maintaining pace, [Plaintiff] has moderate limitation. [Plaintiff] noted that she has a short attention span, and she does not finish what she starts. Additionally, [Plaintiff] also reported problems

with completing tasks and maintaining concentration. [Plaintiff] made no mistakes on the serial seven exercise during the March 15, 2016, psychiatric consultative examination; however, she was not able to successfully copy the design. November 2016 and January 2018 treatment records confirmed sufficient concentration. I find this consistent with a moderate limitation in concentrating, persisting, or maintaining pace.

R 18.  Plaintiff supports her argument by stating that with these two functional areas, the ALJ chose to discount extreme limitations by selectively discussing only a few treatment records. Pl.'s Mem. in Supp. of Pl.'s Mot. 14.  Further Plaintiff argues that the ALJ cherry-picked evidence from a few treatment records, without addressing the abundance of contradictory, objective evidence that was material to the credibility of Plaintiff's extreme limitations.  Pl.'s Mem. in Supp. of Pl.'s Mot. 15.  Plaintiff's argument that the ALJ did not support his finding with substantial evidence is without merit.

The ALJ used the "special technique" and five-point scale to carefully evaluate whether Plaintiff met listings 12.04 or 12.06. 20 C.F.R. Pt. 404, Subpt. P, App. 1.  When evaluating each functional area of "paragraph B" the ALJ pointed directly to testimony and medical records that supported Plaintiff.  However, throughout his analysis, the ALJ also pointed to evidence that discounted her testimony.  For instance, with regard to understanding, remembering, or applying information, the ALJ considered that Plaintiff reported problems with her memory, and that her husband had to remind her to complete daily tasks.  R. 17, 18.  Also, the ALJ considered that during the March 15, 2016, consultative evaluation, Plaintiff only remembered one out of three items on the memory tasks.  *Id.*  However, the ALJ pointed to Plaintiff's March 2016, and April 2016 treatment records, which revealed Plaintiff had normal cognitive functioning.  *Id.*  In addition, with regard to concentrating, persisting, or maintaining pace, Plaintiff noted that she has a short attention span and does not finish what she starts.  *Id.*  She also noted that she has problems completing tasks and maintaining concentration.  *Id.*  Despite Plaintiff's contention, the

ALJ found that the March 15, 2016, psychiatric consultative examination, stated Plaintiff made no mistakes on the serial seven exercise. *Id.* Further, the ALJ pointed to Plaintiff's November 2016 and January 2017 treatment records that confirmed sufficient concentration. *Id.* Therefore, the Court finds that the ALJ considered Plaintiff's impairments, and although he came to a different conclusion than Plaintiff desired, he supported his decision with substantial evidence.

Defendant contends that Plaintiff is essentially asking this Court to re-weigh the evidence, which is impermissible, by stating that the evidence she cites to supports greater restrictions, and that the ALJ did not discuss the evidence that confirmed Plaintiff's extreme limitations. Def.'s Mem. in Supp. of Def.'s Mot. 6, ECF No. 16–1

The Court agrees with Defendant. This Court's role is not to reweigh the evidence, and the Court must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether Plaintiff was disabled. *See Timothy R. v. Berryhill*, No. 19-CV-00915-JMC, 2020 WL 1974954, at *6 (D. Md. Apr. 24, 2020) (citing *Sharp v. Colvin*, 660 F. App'x 251, 258 (4th Cir. 2016)). This Court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. In addition, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r, Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)), *see also Corcoran v. Astrue*, No. CIV. SKG-08-913, 2009 WL 3100350, at *28 (D. Md. Sept. 22, 2009) ("[A]n ALJ's failure to cite a specific piece of evidence is not an indication that the evidence was not considered."). Rather, the ALJ's decision must contain "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the

Commissioner's determination and reason or reasons upon which it is based." *Reid*, 769 F.3d at 865 (quoting 42 U.S.C. § 405(b)(1)).  Accordingly, the ALJ's decision here meets the statutory requirements and remand is not warranted on this issue.

When a plaintiff does not meet the "paragraph B" criteria, Listings 12.04 and 12.06 may nevertheless be satisfied if a plaintiff meets the criteria in "paragraph C."  *Id.*  To satisfy "paragraph C" of Listing 12.04, a plaintiff must show a chronic affective disorder, including repeated episodes of decompensation, or a risk of decompensation upon a minimal increase in mental demands, or an inability to function outside a highly supportive living arrangement.  20 C.F.R. Pt. 404, Subpt.  P, App. 1 § 12.04(C).  "Paragraph C" of § 12.06, requires a plaintiff to show that her impairment results in a complete inability to function independently outside the area of his or her home.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06C.  A plaintiff's impairments meet Listings 12.04 and 12.06 by satisfying either the "paragraph A" and "paragraph B" criteria, or the "paragraph A" and "paragraph C" criteria.  *See Rhonda H. v. Soc. Sec. Admin.*, No. 18-CV-3013-JMC, 2019 WL 3436495, at *3 (D. Md. July 30, 2019).

Here, the ALJ used substantial evidence to determine that the evidence failed to establish the presence of the "paragraph C" criteria.  The ALJ discerned that:

> [Plaintiff] does not have a mental disorder that is "serious and persistent," as defined by the regulations.  R18.  Specifically, [Plaintiff] does not have a medically documented history of the existence of a mental disorder over a period of at least 2 years, with evidence of both:  1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.*  In discussing whether Plaintiff has a marginal adjustment to satisfy "paragraph C," the ALJ further found that:

> The medical evidence of record does not show such marginal adjustment that [Plaintiff] has minimal capacity to adapt to changes in the environment or some new demands. It does not demonstrate that simple changes or increased demands have led to a deterioration of [Plaintiff]'s functioning or inability to function outside of the home. [Plaintiff]'s Key Point mental health treatment records documented consistent attendance at monthly therapy appointments from October 2016 through January 2018.

*Id.* Accordingly, the Court finds there was substantial evidence to support the notion that Plaintiff did not meet the "paragraph C" criteria.

Plaintiff also argues that the ALJ never discussed the "paragraph A" criteria of listing 12.04 and 12.06.[2] Pl.'s Mem. in Supp. of Pl.'s Mot. 12. Defendant argues that since Plaintiff must satisfy both the "paragraph A" and "paragraph B" criteria, or the "paragraph A" and "paragraph C" criteria, the ALJ did not err by not discussing the "paragraph A" criteria, since the ALJ properly explained why "paragraph B" and "paragraph C" would not be met. Def.'s Mem. in Supp. of Def.'s Mot. 7. This Court agrees with Defendant. This Court has already found that the ALJ's findings were supported by substantial evidence. Further, any error was harmless. *Wright v. Comm'r, Soc. Sec. Admin.*, No. JMC-13-3839, 2014 WL 7357447, at *2 (D. Md. Dec. 22, 2014) (An error that is "harmless" does not prejudice the [Plaintiff].). Therefore, there was no need for the ALJ to discuss "paragraph A" criteria, since the ALJ already ruled that both "paragraph B" and "paragraph C" were not met.

**B. The ALJ's RFC Assessment And Corresponding Narrative Discussion Did Not Meet The Standards Set Forth In *Mascio*.**

Plaintiff argues that the ALJ erred because he did not adequately evaluate Plaintiff's

---

[2] Plaintiff only mentions Listing 12.06, in arguing that the ALJ did not discuss the paragraph A criteria. However, the Court will analyze 12.04 as well, as Plaintiff's main argument surrounds both listings, and it may have been inadvertently left out.

moderate limitation in maintaining, concentration, persistence, or pace.[3]  Pl.'s Mem. in Supp. of Pl.'s Mot. 19.  Plaintiff also argues that the ALJ did not impose any RFC restriction to address Plaintiff's moderate difficulties in maintaining concentration, persistence or pace, and did not explain the reasons for the omission.  Pl.'s Mem. in Supp. of Pl.'s Mot. 21.  Further, Plaintiff contends that the RFC limitation to "simple, routine and repetitive tasks" runs afoul of the Fourth Circuit's explicit holding in *Mascio* as it fails to adequately address Plaintiff's ability to stay on task, and thus does not suffice as a limitation that could accommodate her moderate limitation with concentration, persistence, or pace.  Pl.'s Mem. in Supp. of Pl.'s Mot. 22.

In *Mascio*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a plaintiff to performing only "simple, routine tasks."  *Mascio*, 780 F.3d at 638.  This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a [plaintiff] suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in his RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015).  In performing an RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted).

> Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.  The second component, the ALJ's logical explanation, is just as important as the other two.  Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.

---

[3] The Court has summarized Plaintiff's second argument for appeal for clarity and conciseness.

*Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019) (citation

omitted); *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must

*both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge

from [that] evidence to his conclusion.'" (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir.

2016) (citation omitted))).  The functional area of concentration, persistence, or pace, "refers to

the abilities to focus attention on work activities and stay on task at a sustained rate."  20 C.F.R.

Pt. 404, Subpt. P, App. 1 § 12.00(E)(3) (2012).  Since *Mascio*, courts have reviewed various

ALJs' attempts to include corresponding limitations in their RFC assessments for moderate

limitations in this functional area.[4]  However, recently, the United States Court of Appeals for the

Fourth Circuit stated that there is no "categorical rule that requires an ALJ to always include

moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC."

*Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020).  "An ALJ can explain why [a plaintiff]'s

moderate limitation in concentration, persistence, or pace at step three does not translate into a

limitation in the claimant's RFC."  *Id.*   "When medical evidence demonstrates that a [plaintiff] can

engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence,

and pace, courts have concluded that limiting the hypothetical to include only unskilled work

sufficiently accounts for such limitations."  *Id.*  (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d

---

[4] *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals does not address concentration, persistence, or pace; rather it addresses social functioning); *McDonald v. Comm'r*, Civ. No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the plaintiff] could perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements).

1176, 1180 (11th Cir. 2011)).   "The inquiry, as is usually true in determining the substantiality of

evidence, is case-by-case."  *Id.*

In *Thomas*, the ALJ found that the plaintiff had moderate limitations in concentration,

persistence, or maintaining pace, and concluded that the plaintiff had a RFC to perform light

work with the following additional mental limitations:

> [Plaintiff] is able to follow short, simple instructions and perform routine tasks,
> but no work requiring a production rate or demand pace.  She can have occasional
> public contact or interaction and frequent, but not continuous, contact or
> interaction with coworkers and supervisors.  [Plaintiff] must avoid work involving
> crisis situations, complex decision making, or constant changes in a routine
> setting.

*Thomas*, 916 F.3d at 310 (citations omitted).  In reversing the lower court's decision, the Fourth

Circuit made it clear that when an ALJ finds a Plaintiff has moderate limitations in concentration,

persistence, or maintaining pace, the ALJ is expected to include "explicit conclusions about how

the Plaintiff's mental limitations affect her ability to perform job-related tasks for a full

workday—a benchmark established by the [S.S.A.'s] own regulations."  *Id.* at 312 (citing SSR

96-8P, 1996 WL 374184 at *2) (holding that the ALJ's analysis was insufficient because (1) the

ALJ drew no explicit conclusions as to how the Plaintiff's mental limitation affects her ability to

perform job-related tasks for a full workday; (2) the ALJ did not sufficiently explain how she

weighed significant evidence related to the Plaintiff's mental health treatment; (3) the ALJ

expressed the RFC first and only then concludes that the limitations caused by her impairments

were consistent with that RFC; and (4) the ALJ did not give enough information to understand

what the ALJ meant when the ALJ stated that the plaintiff  "could not perform work [that]

"require[ed] a production rate or demand pace" ).

The ALJ in this case found in step three that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace.  R.18.  After making this determination, the ALJ went onto state Plaintiff's RFC and included the following limitations:

> [Plaintiff] is limited to performing simple, routine, and repetitive tasks.  [Plaintiff] is limited to performing simple work-related decisions.  [Plaintiff] can occasionally interact with supervisors, coworkers, and the public.  [Plaintiff] is able to tolerate few changes in a routine work setting, which is defined as she can adapt to changes in a routine work setting that are well-explained or implemented gradually.

R. 19.  Here, while the ALJ included limitations of "simple, work-related decisions," "occasionally interact with supervisors, coworkers, and the public," and that "[Plaintiff] can tolerate few changes in a routine work setting, which is defined as she can adapt to changes in a routine work setting that are well-explained or implemented gradually," the ALJ did not discuss Plaintiff's ability to stay on task as required by *Thomas*.  Furthermore, the ALJ's limitations do not account for whether Plaintiff can perform these tasks for a full workday and workweek.  *See Shinaberry*, 952 F.3d at 121 ("[T]he ability to perform simple tasks differs from the ability to stay on task"); *see also McDonald*, 2017 WL 3037554, at *4 (holding that an RFC limiting a Plaintiff to "simple, routine, and repetitive tasks" did not adequately account for the Plaintiff's ability to sustain work throughout an eight-hour workday where the Plaintiff had moderate difficulties in concentration, persistence, and pace).  Plaintiff may be able to perform simple, routine, and repetitive tasks, with occasional contact with supervisors, coworkers, and the public, but the Court cannot without further explanation, ascertain whether the ALJ believes Plaintiff can perform these tasks for an entire workday as required by the Fourth Circuit.  *Thomas*, 916 F.3d at 312.

In the narrative discussion pertaining to the RFC analysis, the ALJ discussed Plaintiff's mental health impairments.  R. 19–23.  The ALJ considered all symptoms and the extent to

which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence, including opinion evidence.  R. 19.  First the ALJ considered

Plaintiff's oral testimony.  The ALJ noted that:

> [Plaintiff] testified that she cannot work due to severe depression and anxiety
> symptoms.  [Plaintiff] stated that her anxiety symptoms cause panic attacks with
> shortness of breath, and the claimant also reported that she has difficulty being around
> other people in public places.  [Plaintiff] testified that she has difficulty maintaining
> concentration and focusing on daily tasks.  [Plaintiff] testified that she stays in her
> room all day, and [Plaintiff] reported that her husband helps her with household
> tasks…

*Id.*  The ALJ concluded that Plaintiff's allegations were not supported by the objective medical

evidence.  The ALJ further stated that although he finds that Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements

concerning the severity, intensity, persistence and limiting effects of these symptoms were

inaccurate and not consistent with the medical records.  *Id.*  The ALJ further explained that

Plaintiff's admitted daily activities and abilities, including reporting no issues with personal care

tasks such as paying bills, counting change, dressing, bathing, feeding herself, taking walks in

the evening, and riding her motorcycle, do not support a finding of disability.  R. 21.

The ALJ discussed supporting evidence in his analysis.  The ALJ noted that in March

2014 Plaintiff complained of mental health symptoms including a depressed mood, persistent

mood swings, and increased social isolation.  R. 20.  However, the ALJ noted several

discrepancies in the record.  For example, Plaintiff stated that she was feeling "much better," and

she displayed a cooperative attitude with good insight and judgment.  *Id.*  Also, Plaintiff's

February 2015 treatment records revealed a logical thought process, a euthymic mood and

affect, an intact fund of knowledge, and no evidence of suicidal or homicidal ideation.  *Id.*  In

addition, the ALJ noted that "in January 2016, Plaintiff again reported that her mood was good;

and that upon examination, Plaintiff's thought process was logical, her thought content was within normal limits, and her concentration was unremarkable." *Id.* Furthermore, Plaintiff reported an improvement in her symptoms when taking her psychotropic medication as prescribed. *Id.* R. 21.

The ALJ explained further conflicting evidence in the records. For instance, in November 2016, Plaintiff complained of increased depression due to interpersonal stressors and family problems. *Id.* However, Plaintiff also reported that Risperdal medication was calming her and helping to reduce her racing thoughts. *Id.* By May 2017, Plaintiff denied any depression, and stated she was sleeping well. *Id.* Plaintiff described increased suicidal thoughts in September 2017; but her October 2017 mental status examination documented normal motor behavior, no active suicidal or homicidal ideations, sufficient attention and concentration, and appropriate thought content. R. 21. Additionally, the ALJ noted that Plaintiff's 2018 records showed Plaintiff's friendly attitude, normal thought content, and normal cognitive functioning, as well as a euthymic mood and affect, and normal cognitive functioning. *Id.*

Lastly, the ALJ also considered several medical opinions regarding Plaintiff's condition in this case. R. 21–24. The ALJ discussed several mental assessments that stated Plaintiff could perform simple, routine tasks in a work setting with limited social interaction. R. 23. The ALJ noted that these opinions were consistent with the medical records. *Id.* For example, during the March 15, 2016, psychiatric consultative examination, Plaintiff was able to understand and follow simple instructions independently and reported being able to pay bills and count change. R. 21. The ALJ concluded that these skills are consistent with an ability to perform simple, routine, and repetitive tasks as described in the residual functional capacity statement above. *Id.*

Defendant argues that the ALJ complied with *Mascio*, by considering Plaintiffs'
functioning and explaining how the ALJ concluded that her mental impairments did not prevent
her from functioning as outlined in the evidence.  Def.'s Mem. in Supp. of Def.'s Mot. 11.
Defendant may be correct in that the ALJ's RFC is mostly supported by the evidence available in
the record.[5]  Nevertheless, the ALJ failed to draw an "explicit conclusion about how [Plaintiff]'s
mental limitations affect [her] ability to perform job-related tasks for a full workday—a
benchmark established by the Administration's own regulations."  *Thomas*, 916 F.3d at 312; *see
also Lakeisha J. v. Saul*, No. 8:18-CV-01963-GLS, 2019 WL 3720467, at *3 (D. Md. Aug. 5,
2019) (citing SSR 96-8p, 1996 WL 374184, *7)).  While the Court is not requiring Defendant to
include a specific of time off task in the RFC assessment as Defendant suggests, *Thomas* makes
it clear that the ALJ must address whether Plaintiff can perform the RFC for a full workday and
discuss Plaintiff's production rate pace.  Def.'s Mem. in Supp. of Def.'s Mot. 15–17; *Thomas*,
916 F.3d at 310.  In fact, at no point in his decision does the ALJ discuss Plaintiff's "ability to
sustain work at a competitive pace over a typical workday."  *See Beau S. v. Comm'r, Soc. Sec.
Admin.*, Civ. No. SAG-18-2083, 2019 WL 3208002, at *3 (D. Md. July 16, 2019) (reversing and
remanding an ALJ's decision where it fails to address this same capability).  While this was only
one of the flaws the *Thomas* court identified in the RFC, the Fourth Circuit has held before that a
case can be remanded based upon finding only one of the *Thomas* flaws.  *See Perry v. Berryhill*,
765 F. App'x 869, 873; *see also Ursula G. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-18-1841,
2019 WL 2233978, at *3 (D. Md. May 23, 2019) (citing *Perry*, at 873) ("[w]hile *Perry* is an
unpublished decision, and therefore not binding precedent in this Circuit, it supports the
proposition that a case can be remanded when the sole error of the ALJ is the failure to define

---

[5] The Court is not inclined to rule on this issue.

'non-production oriented work setting.'").  Although Defendant attempted to use a term that alluded to some sort of pace by stating, "[Plaintiff] can adapt to changes in a routine work setting that are… implemented gradually," the term "implemented gradually" is ambiguous and this language does not address Plaintiff's production rate pace or ability to stay on task.  The Court compares this case to *Estelle G. v. Saul*, No. CV DLB-19-1537, 2020 WL 5642114, at *5 (D. Md. Sept. 22, 2020), in which the Court held that although the ALJ cited to medical records, and summarized the reason for Plaintiff's RFC, "the ALJ's analysis is missing an explanation of how Plaintiff could stay on task, despite being moderately limited in her ability to concentrate, persist, and maintain pace."  While Plaintiff may be able to perform simple and routine tasks, this Court holds that Defendant did not sufficiently explain Plaintiff's ability to stay on task, "as staying on task differs from the ability to perform tasks."  *Sheri S. v. Saul*, No. 1:19-CV-01924-GLS, 2020 WL 4579871, at *5 (D. Md. Aug. 7, 2020) citing *Mascio, supra*, at 638. The Court cannot ascertain whether the ALJ believes Plaintiff can perform these tasks for an entire workday as required by the Fourth Circuit.  *Thomas*, 916 F.3d at 312; *see also Talmo,* 2015 WL 2395108, at *3.  Absent additional explanation in the instant case, remand is necessary.  "On remand, the ALJ must establish for how long and under what conditions Plaintiff is able to focus his attention on work activities and stay on task at a sustained rate."  *Sean P., v. Saul, Comm'r of Soc. Sec.*, Civ. No. TMD 18-2072, 2019 WL 3778706, at *5 (D. Md. Aug. 12, 2019) (citing *Thomas*, 916 F.3d at 312 n.5).

IV.   **Conclusion**

Based on the foregoing, the Court **REVERSES** and **REMANDS** this matter with specific instructions for the ALJ as outlined in the foregoing opinion.  In making this decision, the Court

offers no opinion on the ALJ's ultimate determination that Plaintiff is not disabled within the meaning of the Social Security Law.

December 11, 2020

<u>                   /s/                    </u>

Charles B. Day

United States Magistrate Judge

CBD/pjkm